CITY OF BAYONNE et al.

*v.*

BOROUGH OF NORTH ARLINGTON.

[Decided February 17th, 1910.]

1. Where a person owns land across which a street has been constructed, he owns the fee-simple of the highway, subject only to the public easement, which extends, not only to the use of the surface for purpose of passage, but also to the portion which lies beneath the surface wherever it is needed for water, sewer, or gas pipes, or any other legitimate street use.

2. In the absence of an ordinance or statute prohibiting it, an owner of the fee of the bed of a street had the right, without a permit from anyone, to lay pipes across and under the street, so long as such pipes did not unduly interfere with public travel or with the sub-surface use to which the street as such was subject.

3. A court of equity will not pass upon the validity of an ordinance; that being the peculiar province of the courts of the common law.

4. A borough has no right to impose conditions which do not tend toward the protection of the interest which it has as guardian of the public easement in its highways.

5. The duty to safeguard the potable waters of the state, and see that none which originate therein are transported beyond its borders, is not within the scope of the duties of the chief executive officer of a borough.

6. *Mandamus* will not lie to compel the exercise of a discretion.

7. An injunction may always go to restrain an illegal and excessive use of authority.

On motion for preliminary injunction.

*Mr. Gilbert Collins,* for the motion.

*Mr. John M. Bell* and *Mr. Warren Dixon, contra.*

HOWELL, V. C.

This suit is brought by the city of Bayonne and the New York and New Jersey Water Company to restrain the borough of North

Arlington from interfering with the action of the water company in laying a line of water pipe across three streets of the borough. The water company is under contract with the city of Bayonne to furnish it with a supply of potable water, and in order to do so, it finds it necessary to lay a pipe line from the Passaic river across the borough and thence to Bayonne. It has acquired title to or a right in a strip of land running across the borough, and by virtue of its ownership of land on both sides of the three streets in question, it claims to own the fee of the streets subject only to the public easement therein, or, in other words, it claims the title to and possession of the streets adjacent to its pipe line route in so far as the same does not in any manner effect the public user, and the consequent right to lay its water pipes under the surface thereof. There is an ordinance of the borough passed in 1900 by which it is ordained that no person or corporation shall dig up under, over or through the public places, avenues, streets or highways of the borough, or open the same at any place, at any time, for any purpose whatever without a permit so to do first obtained signed by the mayor and attested by the clerk of the borough, and requiring every person who desires to so dig up over under or through said places to apply to the mayor in writing describing the place or street for which the permit is desired, and the object of opening the same, and providing that the mayor shall have power to grant a permit for such purpose whenever in his judgment it might seem proper. It further provides for inspection of the work under the supervision of the mayor, and directs that the expense thereof shall be paid by the applicant. On January 4th, 1910, the water company made three separate applications to the mayor of the borough for permits to dig up and open the three streets for the purpose of laying its water pipe across and under the same at the points and in the manner shown in a plan which accompanied the applications. The applications stated that the pipe would be of steel, thirty inches in interior diameter, and would be laid more than three feet below the surface of the avenue, and in such manner as not to interfere with the public travel or with any present constructions in or under the avenue, which application was ac-

companied with the fee required by the ordinance. On January 14th, the mayor of the borough delivered to the water company a writing in which he stated that he had come to the conclusion that he could not grant the permit requested for two reasons:

"(1) Because the resolution of the city of Bayonne under which you claim to be working, which provides that the pipe shall be of an estimated capacity sufficient for the present needs and for other requirements of the city of Bayonne, as well as for the proposed service to the borough of Richmond (New York) clearly indicates to my mind that the city of Bayonne has a sufficient supply of water for its present and future needs, and that the real object of the contract entered into with Bayonne for an alleged emergency supply is to enable you to convey potable waters of this state through the said pipe line across the river road, Kearny avenue and Schuyler avenue to the city of Bayonne and thence to the Kill-von-Kull and under the same to the borough of Richmond in the city of New York and State of New York, contrary to the laws of this state, and it is my duty as the mayor of the borough of North Arlington to see that the laws of the state are faithfully executed; (2) Because your company has entered into a contract to sell water to the Roman Catholic diocese of Newark within the borough of North Arlington without the consent of the corporate authorities of said borough and without the consent of the corporate authorities to the incorporation of your said company or to the laying of pipes by it beneath the surface of the public roads and streets of said borough, contrary to the laws of this state."

The water company then filed its bill to restrain the borough from in any manner interfering with its work in the laying of its water pipes under and across said highways, and offering to submit to any reasonable regulation for the doing of the work that this court might prescribe. On the return of the order to show cause why the injunction should not issue, the defendants (the borough and its mayor) appeared and filed an answer, the burden of which is a repetition of the two reasons given by the mayor for declining to permit the water company to lay its pipe line across the three streets in question. On the argument, it was likewise objected that if the complainants had any remedy whatever, it was by way of *mandamus* and not by injunction.

There seems to be little doubt but that a person who owns lands across which a highway has been constructed owns the fee-simple of the highway, subject only to the public easement, and

that the public easement extends not only to the use of the sur-
face of the earth for purposes of passage, but also to the portion
which lies beneath the surface wherever it is needed for water
pipes, sewer pipes, gas pipes, or any other legitimate street use.
It was so held in the case of *Winter* v. *Peterson, 24 N. J. Law
(4 Zab.) 524,* a case cited by complainants' counsel, and it is so
recognized generally by the bar and bench. *Borough of Brigan-
tine* v. *Holland Trust Co., 37 Atl. Rep. 438.* If there was no
ordinance or other interfering statute, it would seem as if the
water company had a right without a permit from anyone to lay
its pipe line across the three streets in question, so long as it did
not unduly interfere with public travel or with the sub-surface
use to which the highway as such is subject. Question is made
in this case as to the legality of the ordinance above referred to.
The Borough act, which gives authority to boroughs to pass ordi-
nances, in section 28 provides that the council of the borough
shall have power

"to prescribe the manner in which corporations or individuals shall
exercise any privilege granted to them in the use of any street, road or
highway, or in digging up the same for any purpose whatever."

It was argued, on behalf of the complainants, that the ordi-
nance in question was not authorized by that statute, inasmuch
as the ordinance did not prescribe the manner in which corpo-
rations or individuals should dig up the highway for its purposes,
but quite on the contrary thereof, left it with the mayor of the
borough to prescribe the manner in which it should be done, com-
mitting each individual case to his sole discretion, which might be
exercised in one way on one street and in another way on the
next one. The question of the validity of this ordinance, how-
ever, I must decline to pass upon, that being the peculiar province
of the courts of common law.

About two months ago the water company filed its bill against
the borough for the same relief which the complainants now ask
in this suit on behalf of the water company.

The water company had then sought permission from the
mayor and council of the borough and they had refused their con-

sent, except upon conditions which embraced the two reasons which are given by the mayor for his refusal of a permit in the case in hand, and I held that the conditions which they attempted to impose upon the water company were unreasonable, and that the conditions which might be imposed in granting an application under that ordinance were conditions which were necessary for the proper protection of the borough and its public highways; and I still think, after having heard a second argument on the same point, that the borough has no right to impose conditions which do not tend toward the protection of the interest which the borough has as guardian of the public easement in its highways. This seems reasonably clear from the opinion of the supreme court in *Cook* v. *North Bergen, 72 N. J. Law (43 Vr.) 119; affirmed, 73 N. J. Law (44 Vr.) 818.*

In my opinion, the reasons assigned by the mayor for refusing the permit are not sound in law, nor do I find that they are well founded in fact. Having attempted to give the specified reasons as reasons for his refusal, he thereby excludes from consideration any other reasons which may have influenced him, and he has therefore elected to stand or fall by the reasons which he has presented. There may be other good and sufficient causes which moved him to his determination, but they are not apparent, nor am I able to hazard a guess as to what they might be. He has undertaken, on behalf of the borough of which he is mayor, to safeguard the potable waters of the state upon the theory that it is his duty as the chief executive officer of his borough to see to it that no potable waters which originate in New Jersey shall be transported beyond its borders. In the former case, I held that such an arrogation of power was not within the scope of the duties of the chief executive officer of a borough; and in so far as his refusal is based upon this reason, it stands without foundation. His other reason, viz., that the water company intends to supply water to the Catholic cemetery, seems to be quite as devoid of a foundation. If, under the law, the water company shall eventually find that it has no right to sell water to anyone within the limits of the borough, it will not be permitted to do so, but it will be soon enough to make this inquiry when the attempt is made.

I, therefore, am of opinion that the second reason given by the mayor is quite as fallacious as the first, and that his refusal must therefore appear to be without reason, and, consequently, void as a mere capricious exercise of a discretion which the ordinance clothes him with, and not a discretion which is based upon an examination of pertinent and relevant facts, and which flows from the exercise of a judgment that considers the legal rights of all interests involved.

I have no doubt of the jurisdiction of this court to act in the premises. The borough claims that if the water company has any remedy it is by way of *mandamus*. This position was well answered by the statement that *mandamus* will not lie to compel the exercise of a discretion. The reason is quite obvious. The only judgment that could be rendered in an action of *mandamus* would be that the officer should exercise his discretion. The court would not attempt to do so for him. This he claims he has done; hence the *mandamus* could be of no avail. *Roberts* v. *Holsworth, 10 N. J. Law (5 Halst.) 57; Benedict* v. *Howell, 39 N. J. Law (10 Vr.) 221.*

The case appears to me to be an ordinary one of an attempt to use an authority unreasonably and without a due consideration of the rights of the water company. Its effect is to practically destroy its right in the sub-surface of the highway upon avowed grounds that appear to me to be untenable, and hence to cause to the water company an injury which, if permitted to continue, would work an irreparable damage to it. An injunction may always go to restrain an illegal and excessive use of authority. *2 High Inj. § 1309.*

I, therefore, am of opinion that an injunction should issue in accordance with the prayer of the bill.