Complainants, Howard Co. Jewelers and A.R. Goldblatt and Co., sell commodities at retail, including eye glasses. They employ licensed optometrists and display signs at their place of business in the form of eye glasses.
The defendant, New Jersey State Board of Optometrists, was created by R.S. 45:12-1 et seq. The power which that Board may exercise with respect to the subject-matter of this complaint must be found, if it exists, in the statute.
On May 19th, 1942, the defendant Board adopted the following rule:
"7. That on any building wherein a licensed optometrist practices the profession of optometry, there can be displayed no sign pertaining to the art and practice of optometry other than a sign whose dimension shall not exceed six inches by twenty-four inches containing the optometrist's name and the word `Optometrist' in letters not to exceed two inches in height. On the door or window the same size letters may be used together with `Eyes examined' or `Hours for the examination of the eyes' or `Examination by appointment' and then his office hours underneath. It is strictly prohibited to have an eye glass sign, painted or Neon, either in the form of eyes, oxford or structure resembling eyes or eye glass frames."
R.S. 45:12-1 et seq., after providing for the creation of the Board, empowers the Board to grant license to practice optometry if the examination of any applicant is satisfactory to the majority of the Board. Such licenses are automatically renewed upon payment annually of a license fee of $5. R.S. 45:12-9. The Board also has power to revoke such certificates for failure to pay the annual fee or for "unprofessional conduct" upon notice and hearing. R.S. 45:12-11 empowers the Board to revoke a certificate or to suspend the right to practice thereunder of a person convicted of violation of this chapter or of any criminal offense or who is found by the Board to be grossly incompetent, afflicted with contagious disease, an habitual drunkard or guilty of unprofessional conduct. "Unprofessional conduct" is by the statute defined: *Page 6 
"a. Any conduct of a character likely to deceive or defraud the public; b. The loaning of his license or certificate by a licensed optometrist to any person; c. The employment of `cappers,' `steerers,' `chasers' or `solicitors' for the purpose of obtaining business or personally acting in that capacity for that purpose; d. The obtaining of a fee or compensation by fraud or misrepresentation; e. The employment, either directly or indirectly, of a suspended or unlicensed optometrist to practice optometry; f. The willful advertising or publishing of grossly false, fraudulent or misleading statements of his art, skill or knowledge or of his methods of treatment or practice."
The only power granted by the statute to the defendant Board to make rules and regulations is contained in R.S. 45:12-4 as follows:
"The board shall make such rules and regulations not inconsistent with the law, as may be necessary for the proper performance of its duties * * *."
Ruling No. 7 is not one in furtherance of the "proper performance" of the duties of the Board.
Complainants were notified by letter signed by Louis A. Rochat, secretary and treasurer of the Board, that the Board had adopted at a meeting the ruling hereinabove set out and that "This ruling must be complied with on or before December 31st, 1942. If not complied with, licenses to practice optometry in this State will not be renewed." Thus the Board undertook to revoke the license of the optometrists in question unless the ruling was complied with. This the Board could not do even if it be conceded that it had the power to make the ruling mentioned without notice, charges and an actual hearing under the statute of its creation and the law of this state.
This action is brought by complainants who maintain "eye glass signs" on behalf of themselves and others similarly situated who are willing to join therein and contribute to the expense thereof.
On the filing of the bill an order to show cause with intermediate restraint was granted. The matter is now before the court on the return of that order.
This court has frequently exercised its power to enjoin the enforcement of invalid ordinances or the abuse of administrative *Page 7 
powers granted by the legislature. New York Staats-Zeitung v.Nolan, 89 N.J. Eq. 387; 105 Atl. Rep. 72; North Jersey StreetRailway Co. v. South Orange, 58 N.J. Eq. 83 (at p. 87);43 Atl. Rep. 53; Drive-To Department Stores v. Newark, 115 N.J. Eq. 222; 170 Atl. Rep. 29. An injunction may always go to restrain an illegal and excessive use of authority. Bayonne v.Borough of North Arlington, 77 N.J. Eq. 166; 75 Atl. Rep. 558.
Preliminary injunction granted.